UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PEGGY YOUNG | ) |
| | ) |
| 12715 Hoven Lane | ) |
| Bowie, Maryland 20716, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED PARCEL SERVICE OF AMERICA, INC., | ) |
| | ) |
| UNITED PARCEL SERVICE, INC., | ) |
| | ) |
| UPS HEALTH PROGRAM, | ) |
| | ) |
| Registered Agent: | ) |
| CSC Lawyers Incorporating Service Co. | ) |
| 7 Saint Paul Street, #1660 | ) |
| Baltimore, Maryland 21202 | ) |
| | ) |
| AETNA LIFE INSURANCE COMPANY | ) |
| | ) |
| AETNA DISABILITY AND ABSENCE MANAGEMENT | ) |
| | ) |
| Registered Agent: | ) |
| Prentice Hall Corporation System Maryland | ) |
| 7 Saint Paul Street, #1660 | ) |
| Baltimore, Maryland 21202 | ) |
| | ) |
| Defendants. | ) |

Civil Action No._____

DKC 08 CV 2586

FILED
LODGED

OCT 0 3 2008

AT
CLERK U.S.
DISTRICT
BY_____

## COMPLAINT

## INTRODUCTION

1.      The Plaintiff, Peggy Young, seeks damages and equitable relief from her

employer as the plan sponsor and administrator of the UPS Health Program, an ERISA health

and welfare benefit plan, for violations of certain provisions of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  In particular, Ms. Young

seeks to recover under  § 1132(a)(1)(B) benefits due her under the UPS Health Program and

seeks to recover for violations of 29 U.S.C. § 1140 and federal common law for estoppel and misrepresentation, as UPS interfered with her attainment of a right to benefits by telling her that she did not qualify for benefits and should not file a claim for benefits.  Ms. Young also seeks damages and equitable relief for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e et seq; and for violations of 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 29 U.S.C. § 1132(e)(2),  42 U.S.C. § 2000e-5(f), and 28 U.S.C. § § 1331 and 1343, and 42 U.S.C. § 1988.

3.      Venue herein is proper as these claims arose in substantial part within the State of Maryland.

## PROCEDURAL REQUIREMENTS

4.      On or about July 23, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Such charge was filed within 300 days after one or more of the alleged unlawful employment practices in violation of 42 U.S.C. § 2000e-2 had occurred.

5.      On or about September 2, 2008, the EEOC issued Plaintiff a Notice of Right to Sue, giving Plaintiff 90 days from receipt of such notice to file her Complaint related to her Title VII claims.

## PARTIES

6.      Plaintiff Peggy Young is a caucasian female who is a citizen of the United States and a resident of the State of Maryland.  She became an employee of United Parcel Service on or about October 23, 1999, and is a participant in its "UPS Health Program".  At times relevant to this complaint she was employed as an early morning driver for UPS.

2

7.      Defendant United Parcel Service, Inc., and United Parcel Service of America, Inc., (collectively referred to as "UPS") are corporations which, at all times relevant to this Complaint, have done business throughout the state of Maryland.  Defendant is an employer within the meaning of all statutes relevant to this complaint, and is an employer of more than 500 employees.

8.      Defendants maintain that United Parcel Service, Inc., is Plaintiff's employer.

9.      The UPS Health Program Summary Plan Description identifies United Parcel Service of America, Inc., as the employer and the plan sponsor of the UPS Health Program.

10.      Defendants maintain that United Parcel Service of America, Inc., is the Plan Administrator of the UPS Health Program.

11.      The UPS Health Program Summary Plan Description identifies the Plan Administrator as "United Parcel Service."

12.      United Parcel Service is the Plan Administrator of the UPS Health Program and the entity that makes final determinations as to claims for benefits.

13.      United Parcel Service of America, Inc., and United Parcel Service, Inc., share the same corporate headquarters campus and legal office at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328.

14.      The UPS Health Program (referred to hereinafter as "Defendant Plan") is an employee welfare benefit plan subject to ERISA.

15.      The UPS Health Program is a plan self-funded by UPS.

16.      Aetna Life Insurance Company is the Short Term Disability claims administrator for the UPS Health Program and the entity with whom UPS contracted to perform certain functions related to the plan, including initial benefits determinations.

3

## COUNT ONE: ERISA

17.     On or about January 24, 2003, Peggy Young became covered by the UPS Health Plan.  Ms. Young's family had coverage under this plan as well, as Ms. Young had opted for the "You + Family" medical coverage through UPS for herself, her husband, and her two children.

18.     In or about the summer of 2005, Ms. Young and her husband were attempting a pregnancy through in vitro fertilization ("IVF").  Ms. Young followed her supervisor's instructions about how to make certain that her health benefits continued while she was out on leave.  When she called to inquire, her supervisor told her that everything was taken care of and that she need not worry.

19.     On or about September 30, 2005, Ms. Young lost her medical benefits for reasons she was never able to ascertain. The lapse in benefits continued throughout the full month of October 2005.

20.     In or about October 2005, Ms. Young suffered a miscarriage and returned to work.  She then spoke with her supervisor and, at his direction, with Ms. Carol Martin, a registered nurse who is UPS's Occupational Health Manager in charge of medical leave and health and disability coverage, about the fact that Ms. Young had lost her medical insurance. Ms. Martin told her that, in the future, all she needed to do to continue her benefits was to file for FMLA and to fax a doctor's note.

21.     On or about July 15, 2006, Ms. Young went on unpaid leave in preparation for an eventually successful IVF process which resulted in a second pregnancy and the birth of Ms. Young's daughter on April 29, 2007.

4

22.     On October 11, 2006, when Ms. Young was ready to return to work at UPS, Ms. Young's obstetrician's office at the National Naval Medical Center gave Ms. Young a note To Whom It May Concern that stated:

> Peggy Young is currently pregnant and due to deliver on or about May 2, 2007. Due to her pregnancy it is recommended that she not lift more than 20 pounds.

23.     Ms. Young gave the note referred to in the preceding paragraph to UPS Occupational Health Manager Carol Martin as she had been instructed by her supervisor to do.  Ms. Young explained that her doctor had told her she could return to work but that he recommended that she not lift more than 20 pounds.

24.     In the conversation referred to in the preceding paragraph, Ms. Martin told Ms. Young that Ms. Martin did not know what to do with Ms. Young.  Ms. Martin told Ms. Young that she could not come back to work during her pregnancy.  Ms. Martin also told Ms. Young that she was not qualified to receive disability benefits because she was not disabled, but that she could not work because there was no light duty available for pregnancy.  Ms. Martin said that Ms. Young would be coded in the UPS system as "out of work - other".  Ms. Martin also said that Ms. Young might want to think about her employment with UPS since she had used up all of her FMLA leave.  Ms. Young understood Ms. Martin to be advising Ms. Young to quit her employment with UPS due to her pregnancy.

25.     Ms. Young explained to Ms. Martin that she needed and wanted to come back to work and that she believed she was able to perform her regular job at UPS.

26.     Ms. Young also called her supervisor, Ursla, to inform her about her readiness to return to work and about the October 11 doctor's note.  Ms. Young explained that she was able to work, but that her doctor had recommended that she not lift over 20 pounds.  Ursla told

5

Ms. Young that she would find out if there was any other work she could do in the building and call her back. However, Ursla never called Ms. Young back and did not return several calls that Ms. Young left for Ursla in an attempt to follow up on this conversation.

27.     In early November 2006, Ms. Young went to her worksite and spoke with Myron Williams who was the manager of UPS business at that worksite. Ms. Young explained to Mr. Williams that she was pregnant and that her doctor had advised her that she should not lift more than 20 pounds, but that she was willing and able to work. She explained that it was important to her not to lose her benefits. She offered to continue to do her regular job or to be moved to a desk job. Mr. Williams told Ms. Young UPS did not want Ms. Young back in the building until she was no longer pregnant because she was too much of a liability.

28.     Throughout Ms. Young's conversations with the UPS Occupational Health Manager, and her supervisor, and Mr. Williams, Ms. Young maintained that she would not have trouble performing her regular position because she was almost never called upon to lift anything over a few pounds -- much less 20 pounds -- in that position. She also said that, should the rare occasion arise where she had a delivery over 20 pounds, she would be able to make alternative arrangements with her co-workers for the delivery of the heavy package, as others have done from time-to-time for a variety of reasons. Ms. Young repeatedly stated her ability and willingness to work and her need to work during her pregnancy. However, UPS would not allow her to work during her pregnancy.

29.     From October 11, 2006, through June 26, 2007, Ms. Young lost all of her UPS wages and benefits, including medical, dental, and disability benefits, because UPS would not permit her to work due to her pregnancy.

6

30.     Ms. Young did not file a claim for short-term disability benefits for some time following UPS's refusal to let her work, because the UPS Occupational Health Manager Carol Martin expressly told her not to file a claim because she was not disabled, would not be coded in the UPS system as disabled, and did not qualify for benefits.

31.     Ms. Young made a concerted effort between approximately July 15, 2006, and November 6, 2006, to obtain information about the UPS Health program; however, she was unable to obtain the information that she needed.

32.     In January 2007, Ms. Young learned that UPS's decision not to permit her to return to work caused her to lose her health insurance benefits.

33.     In January 2007, Ms. Young learned from that she was coded in UPS employee records as being out of work due to disability.

34.     On January 24, 2007, Ms. Young filed a claim for short-term disability benefits.

35.     On February 2, 2007, a claims analyst with Aetna, the claims administrator for the UPS Health Program, sent Ms. Young a letter informing her that she did not qualify for short-term disability ("STD") benefits because she did not "satisfy the 90 day filing limit as required by your UPS Benefit Plan" in that she had been absent from work since July 15, 2006, but she did not apply for STD benefits until January 24, 2007.

36.     On February 20, 2007, Ms. Young called UPS Human Resources to learn whether her medical benefits should continue throughout her pregnancy since the pregnancy was a pre-existing condition at the time her medical insurance was stopped.  UPS HR referred Ms. Young to Aetna, telling her she needed to appeal the denial of benefits issue to them. However, when she called Aetna to discuss the matter, Aetna told her that filing an appeal with regard to her STD benefits would have no effect on her medical benefits.  This was

7

characteristic of the treatment Ms. Young received when she attempted to get information about her ERISA benefits.  UPS referred her to Aetna and Aetna referred her back to UPS. Nobody would answer her questions.

37.     On February 22, 2007, Ms. Young appealed the denial of STD benefits.

38.     On April 3, 2007, the UPS Claims Review Committee denied Ms. Young's appeal of the denial of her claim for STD benefits, calling its decision a "final decision".  However, under the terms of the UPS Health Program Summary Plan Description, Ms. Young was entitled to a second level of appeal 60 days after her first level appeal denial.  Ms. Young was never notified of her appeal rights as required by ERISA.

39.     On April 29, 2007, Ms. Young gave birth to her daughter.

40.     On June 26, 2007, Ms. Young returned to work at UPS.

<u>COUNT TWO: TITLE VII</u>

41.     Plaintiff realleges the facts set forth above.

42.     UPS maintains a pattern of discrimination in employment on the basis of sex and race.

43.     UPS has a requirement that early morning drivers -- such as Ms. Young -- must be able to lift 70 pounds.

44.     As an early morning driver, Ms. Young's deliveries tended to be almost all light-weight envelopes of not more than a few pounds.  She almost never, if ever, was required to lift more than 20 pounds and almost never, if ever, was required to lift 70 pounds.

45.     The 70-pound requirement for early morning drivers does not accurately measure one's ability to perform the job and is not a business necessity for the position.

46.     The 70-pound requirement for early morning drivers operates to discriminate against women, particularly pregnant women, and it discriminated against Ms. Young when she was pregnant.

47.     UPS legally was obliged to permit Ms. Young to decide whether to follow her doctor's recommendation related to the number of pounds she should lift, and was legally obliged not to insist that she quit work because of her doctor's recommendation that she not lift over 20 pounds during her pregnancy.

48.     UPS discriminated against Ms. Young on the basis of her pregnancy and/or related medical conditions when it refused to permit her to work due to her doctor's recommendation that she not lift more than 20 pounds.

49.     UPS discriminated against Ms. Young on the basis of her pregnancy and/or related medical conditions when it told her she was not entitled to STD benefits even though she was not permitted to work.

50.     Whereas others who, for medical reasons, are temporarily unable to qualify for some aspect of their position as set forth in their position descriptions, are entitled to STD benefits under the UPS Health Program, UPS specifically told Ms. Young that she was not entitled to disability benefits.

51.     UPS fails and refuses to provide benefits for "disabilities" caused by pregnancy on the same terms that it provides leave time and benefits for "disabilities" caused by other conditions.

52.     The foregoing acts of Defendant UPS discriminated against Ms. Young because of her sex with malice and reckless indifference to her rights under Title VII of the Civil Rights Act of 1964, as amended.

9

## COUNT THREE: SECTION 1981

53.   Plaintiff realleges the facts set forth above.

54.   UPS maintains a pattern of discrimination in employment on the basis of race.

55.   In the UPS worksite where Plaintiff is employed, the majority of the employees -- unlike Peggy Young -- are African-American.

56.   Supervisors and managers at UPS enforce the no-light-duty rule against those they wish to enforce it against, and make exceptions to it for those for whom they wish to make exceptions, in a way that discriminates against employees on the basis of race.

57.   UPS would not permit Ms. Young, a caucasian female, to go on light duty during her pregnancy.  However, in a close period of time, UPS did permit an African-American female in the same department to go on light duty during her pregnancy.

58.   UPS's rule about no light duty for pregnant women is not uniformly applied to employees regardless of their race.

59.   UPS's decision to force Ms. Young to quit work during her pregnancy while permitting an African-American employee to go on light duty during her pregnancy was discrimination against Ms. Young, with malice and reckless indifference to her rights under Section 1981 and 2000e.

## PRAYER FOR RELIEF

60.   Plaintiff suffered and continues to suffer damages including the denial of benefits, lost wages, and great emotional distress.

61.   As a direct and proximate result of the Defendant's breaches of ERISA, Title VII, and Section 1981, Plaintiff has been caused to incur attorney's fees.

WHEREFORE, Plaintiff demands judgment against the Defendants and prays that this Court enter a judgment:

● declaring that the acts and practices complained of herein are in violation of ERISA, Title VII, and Section 1981;

● awarding Plaintiff under ERISA benefits wrongfully denied her under the UPS Health Program;

● awarding Plaintiff under Title VII and/or Section 1981 the pay and fringe benefits she has lost as a result of Defendant UPS's unlawful discrimination against her;

● awarding Plaintiff under Title VII and/or Section 1981 compensatory and punitive damages in an amount to be determined at trial;

● awarding Plaintiff pre-judgment and post-judgment interest;

● awarding Plaintiff the costs of this action, together with reasonable attorney's fees; and

● granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of any issues triable by jury.

Respectfully submitted,

Sharon Fast Gustafson
Counsel for Plaintiff
4041 N. 21st Street
Arlington, Virginia 22207-3040
(703) 527-0147 telephone
(703) 527-0582 telefacsimile
sf.gustafson@verizon.net

11