# NATIONAL MASTER
# UNITED PARCEL SERVICE
# AGREEMENT



**For the Period:**
**August 1, 2002 through July 31, 2008**

D000658A

**EXHIBIT**

tabbies®

*1*

When requested by the Union, time clocks will be left in place for employees to record their own work hours for their own personal use.

## ARTICLE 13. PASSENGERS

No driver shall allow anyone, other than employees of the Employer who are on duty, to ride on their truck except by written authorization of the Employer, except in cases of emergency arising out of disabled commercial equipment, accidents, or an Act of God, in accordance with Department of Transportation regulations.

## ARTICLE 14. COMPENSATION CLAIMS

## Section 1.

When an injury is reported the reference number will be given to the employee and when requested, a copy of the injury report will be furnished to the employee within two (2) working days of such request. A copy of the injury report will also be furnished to the Local Union if requested by a Local Union official.

The Employer agrees to cooperate toward the prompt disposition of employee on-the-job injury claims. No employee will be disciplined or threatened with discipline as a result of filing an on-the-job injury report. The Employer or its designee shall not visit an injured worker at his/her home, without his/her consent.

The Employer shall provide the Union Co-chair of the National Safety and Health Committee with current summaries of the essential functions of all positions covered by this Agreement. The Union shall have the right to challenge any such summary through the applicable grievance procedure. Any employee who is adversely affected by any such summary shall have the right to challenge such summary through the applicable grievance procedure.

The Employer shall provide Worker's Compensation protection for all employees even though not required by state law or the equivalent thereof if the injury arose out of or in the course of employment.

An employee who is injured on the job, and is sent home, or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his/her regular shift on that day. Upon receiving an employee's timely report of injury, the Employer shall not pressure an employee to continue to work. When, because of such pressure, an employee spends time in a clinic after his or her normal finish time, the time spent shall be the subject of a pay claim through the grievance procedure.

An employee who has returned to regular duties after sustaining a compensable injury, and who is required by the Worker's Compensation doctor to receive additional medical treatment during the employee's regularly scheduled working hours, shall receive the employee's regular hourly rate of pay for such time.

The Employer agrees to provide any employee injured locally immediate transportation, at the time of injury, from the job to the nearest appropriate medical facility and return to the job, or to the employee's home, if required. In such cases, no representative of the Employer shall be permitted to accompany the injured worker while he/she is receiving medical treatment and/or being examined by the medical provider, without the employee's consent. In the event that any employee sustains an occupational illness or injury while on a run away from the home terminal, the Employer shall obtain medical treatment for the employee, if necessary, and, thereafter, will provide transportation by bus, train, plane or automobile to the employee's home terminal, if and when directed by a doctor.

In the event of a fatality, arising in the course of employment while away from the home terminal, the Employer shall return the deceased to the home of the deceased at the point of domicile.

## Section 2. Temporary Alternate Work

The Company may continue a modified work program on a nondiscriminatory basis. This program is designed to provide temporary work opportunity to those employees who are unable to perform their normal work assignments due to an on-the-job injury. Employees shall be provided their guaranteed hours for

D000678

the duration of TAW, provided the work is available. These guaranteed hours will be reduced as medical restrictions dictate.

The Employer will develop a list of possible TAW assignments by location. It is understood that this list may not be all-inclusive and management maintains the right to determine the availability and designation of all TAW assignments.

Any such program that has been, or is in effect, as of the effective date of this Agreement, shall be reduced to writing, a copy of which must be submitted to the National Safety and Health Committee and the affected Local Union. If either party wants to include non-work related injuries or illnesses under the TAW program, the parties will meet and agree upon such amendment. The Employer shall also meet with the Local Union upon request to discuss any changes the Local Union may propose in the TAW program. Any unresolved issues will be referred to the National Safety and Health Grievance Committee for resolution.

## Section 3. Permanently Disabled Employees

The Parties agree to abide by the provisions of the Americans with Disabilities Act. The Company shall be required to negotiate with the Local Union prior to providing a reasonable accommodation to a qualified bargaining unit employee.

The Company shall make a good faith effort to comply in a timely manner with requests for a reasonable accommodation because of a permanent disability. Any grievance concerning the accommodation not resolved at the center level hearing will be referred to the appropriate Union and Company co-chairs for the Local Area or to the Region Grievance Committee, if applicable. If not resolved at that level within ten (10) days, the grievance shall be submitted directly to the National Safety and Health Grievance Committee.

If the Company claims that the individual does not fall within the protections of the Americans with Disabilities Act, then the grievance must follow the normal grievance procedure in order to resolve that issue before it can be docketed with the National Safety and Health Committee.

Any claim in dispute concerning rights under this Section shall be addressed under the grievance and arbitration procedures of this Agreement. A grievance may be filed by an employee or the Union, notwithstanding any contrary provision in any Supplement, Rider or Addendum. The submission of a claim under this Section to the grievance and arbitration procedures of the Agreement shall not prohibit or impede an employee or the Union from pursuing their statutory rights under the Americans with Disabilities Act (ADA) or comparable state or local laws.

The parties agree that appropriate accommodations under this Section are to be determined on a case-by-case basis.

## Section 3.1

Pursuant to Article 22.3 and Article 37 and notwithstanding language in the Supplements, Riders or Addenda, the Employer and the Union agree to meet and discuss certain full-time positions that may be filled by employees who can no longer perform their assigned job. When full-time openings occur, these employees will be given the opportunity to fill the opening prior to the Employer hiring from the outside. The employee must be physically fit and qualified to perform the new job. The employee placed in the opening will be paid the rate for the job based upon the employee's seniority.

## ARTICLE 15.  MILITARY CLAUSE

Employees in service in the uniformed services of the United States, as defined by the provisions of the Uniform Services Employment and Reemployment Rights Act (USERRA), Title 38, U.S. Code Chapter 43, shall be granted all rights and privileges provided by USERRA and/or other applicable state and federal laws. This shall include continuation of health coverage as provided by USERRA, and pension contributions for the employee's period of service, as provided by USERRA. Employees shall be subject to all obligations contained in USERRA which must be satisfied for the employees to be covered by the statute.

The Employer, in its discretion, may make additional payments or award additional benefits to employees on leave for service in the

D000679

uniformed services in excess of the requirements outlined in the USERRA.

Upon notification from an employee that he/she is taking USER-RA-qualified military leave, the Employer shall notify the Local Union within five (5) business days.

## ARTICLE 16. LEAVE OF ABSENCE

### Section 1.

The Employer agrees to grant the necessary time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official business, provided forty-eight (48) hours written notice is given to the Employer, by the Union, specifying length of time off. The Union agrees that, in making its request for time off for Union activities, due consideration shall be given to the number of employees affected in order that there shall be no disruption of the Employer's operations due to lack of available employees.

A Union member elected or appointed to serve as a Union official shall be granted a leave of absence during the period of such employment, without discrimination or loss of seniority rights, and without pay.

### Section 2.

Any employee desiring leave of absence from employment shall secure written permission from both the Union and the Employer. The request for leave of absence shall be made in writing at least thirty (30) days before the day on which the leave is sought to commence. If the leave is not foreseeable, the employee shall submit the written request as soon as possible and shall include an explanation why the leave was not foreseeable. The Employer and Union shall respond to the request in writing within ten (10) days after receiving the request. The maximum leave of absence shall be for ninety (90) days and may be extended for like periods. Permission for same must be secured from both the

Union and the Employer. During the period of absence, the employee shall not engage in gainful employment, except as provided in Section 3 below.

Failure to comply with this provision shall result in the complete loss of seniority rights for the employees involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights. The employee may make suitable arrangements for the continuation of health and welfare and pension payments before the leave may be approved by either the Local Union or the Employer.

## Section 3. Loss of License

### Section 3.1 Leave of Absence

When an employee, in any job classification requiring driving, loses his or her operating privilege or whose license has been suspended or revoked for reasons other than those for which the employee can be discharged by the Employer, leave shall be granted for such time as the employee's operating privilege or license had been suspended or revoked, but not for a period longer than one (1) year, provided the driver whose operating privilege or license has been suspended or revoked notifies the employee's immediate supervisor before the employee's next report to work of such suspension or revocation. The above provision need only apply to the first (1st) suspension or revocation except for suspension of commercial drivers license (CDL) of one (1) year or less duration.

Employees who take a leave of absence under this Section whose loss of operating privilege or license is the result of driving under the influence of drugs or alcohol will be allowed alternative work and to return to their job in accordance with Section 3.3 below.

## Section 3.2 Alternate Work (Other than Alcohol/Controlled Substance)

When an employee, in any job classification requiring driving, has lost his/her license under this Article he/she shall be afforded the

D000680

This Section does not apply to the employee that has lost his/her license for being disqualified for testing positive for controlled substances.

## Section 3.4   CDL Qualification

This Article shall also apply in the event an employee is unable to successfully pass the DOT commercial drivers license (CDL) examination provided the employee makes a bona fide effort to pass the test each time the opportunity presents itself.

## Section 4. Maternity and Paternity Leave

It is understood that maternity leave for female employees shall be granted with no loss of seniority for such period of time as her doctor shall determine that she is physically unable to return to her normal duties and maternity leave must comply with applicable state and federal laws.

A light duty request, certified in writing by a physician, shall be granted in compliance with state or federal laws, if applicable.

Paternity leave shall be granted in accordance with Section 6 of this Article with the exception of employees not able to meet the qualifications set out in Section 6, who shall be granted leave not to exceed one (1) week.

Notwithstanding any provision to the contrary in any Supplement, Rider, or Addenda, an employee shall be allowed to designate in any vacation year paid time off up to twenty (20) days, to be used in the next vacation year, in accordance with this paragraph. Any paid time off that is provided on a weekly basis can only be banked in weekly increments. The accrued paid time off may be used in the next vacation year to cover any period of time that (1) the employee is determined to be unable to perform her job due to pregnancy (for the father, time off is requested due to the birth) and (2) is not covered by the FMLA, existing disability plans or other paid time off. If the accrued time off is not used in that year, it will be paid to the employee within two (2) weeks of the request. If the vacation is not used as part of the leave, and it would have originally been taken in that vacation year, the

- 39 -

D000681

---

opportunity to displace junior, one (1) full-time or two (2) part-time, inside employees, until he/she can return to his/her driving job, not to exceed one (1) year, unless provided for otherwise in the Supplements, Riders or Addenda. The employee shall receive the appropriate rate of pay for the job performed based on his/her seniority. Coverage for benefits shall continue for the length of the leave of absence or for the job duration, up to one (1) year.

## Section 3.3   Alternative Work (Alcohol/Controlled Substance)

When an employee, in any job classification requiring driving, has lost his/her license for driving under the influence of alcohol or a controlled substance he/she will be offered available inside work of one (1) full-time or two (2) part-time openings, not to exceed one (1) year provided that the employee is assessed by a Substance Abuse Professional (SAP) and is released to return to work by the SAP. The SAP shall establish the terms upon which the employee may return to work. The employee must also enter a rehabilitation program, if required by the SAP, within one (1) month of the SAP's assessment. The employee shall be returned to driving once he/she successfully completes the rehabilitation program, provided his/her driving privileges have been restored. The employee shall receive the appropriate rate of pay for the job performed based on his/her seniority. Coverage for benefits shall continue for the length of the leave of absence or for the job duration, up to one (1) year.

Any driver cited for Driving Under the Influence who does not have his/her license suspended, or who has limited driving privileges, shall be assessed by a SAP within five (5) working days of the citation. If the SAP determines the driver does not require rehabilitation, then he/she shall be allowed to return to driving. Until the assessment is completed, the driver shall be allowed to work inside in accordance with the paragraph above. If rehabilitation is required, the above paragraph shall also be applicable. The one time right to rehabilitation provided in Article 35, Section 4.11 shall not be applicable to a driver who completes a rehabilitation program under this paragraph, unless, as a result of the DUI citation, the driver is convicted or loses his/her license for driving.

- 38 -

the car condition report or other form required by law. Any automotive/maintenance person consulted will be noted on this report.

When the occasion arises where an employee gives a written report on forms in use by the Employer of a vehicle/equipment being in unsafe working or operating condition and receives no consideration from the Employer, the employee shall take the matter up with an officer of the Union, who will take the matter up with the Employer. But in no event shall an employee be required to operate a vehicle/equipment that is unsafe or in violation of any federal, state or local, rules, regulations, standards or orders applicable to equipment or commercial motor vehicles.

Copies of the car-condition reports or Driver Vehicle Inspection Reports (DVIR) will be available in centers for review by drivers. Upon notification, drivers may make copies of said reports in facilities that have copy equipment. In facilities with no copy equipment, the employee will be provided a copy as soon as practical, when requested. In no case will the copy of the DVIR remain valid after the DOT retention requirement (ninety (90) days) or the original DVIR expires. The current DVIR will be maintained in each vehicle between completion of Preventative Maintenance Inspections (PMI). Other copies will be made available for review by drivers as required by the Federal Motor Carrier Safety Act (FMCS), 49 CFR 396, as applicable to the Employer.

# Section 3. Accidents and Reports

Any employee involved in any accident shall immediately notify the Employer.

When required by the Employer, the employee, before the end of the employee's shift, shall complete a report of the accident including all available names and addresses of witnesses to the accident. The reference number will be given to the employee, and when requested, a copy of the accident report will be furnished to the employee within two (2) working days of such request. A copy of the accident report will also be furnished to the

Local Union if requested by a Local Union official. In cases of equipment accidents where a Driver's Report of Accident form is completed, the employee will be given a copy of the form the same day, when requested. In facilities with no copy equipment the employee will be provided a copy as soon as practicable.

In the event of a vehicle accident, the Employer shall have twenty (20) days to complete its investigation, if warranted, and ten (10) days to take disciplinary action, if any, unless otherwise mutually agreed. Except for serious accidents, where the driver may be presumed to be at fault, a driver will not be removed from the payroll during an investigation of the accident.

A serious accident is defined as one in which:

1. There is a fatality, or;

2. A citation is issued and there is bodily injury to a person who, as a result of the injury, receives immediate medical treatment away from the scene of the accident, or;

3. A citation is issued and one or more motor vehicles incur disabling damage as a result of the accident requiring a vehicle to be transported away from the scene by a tow truck or other vehicle, or:

4. Any vehicular contact with an aircraft which results in damage that grounds such aircraft, or;

5. There is an accident involving a motor vehicle on Company property, outside of any building, that results in a fatality or bodily injury to a person, who as a result of the injury receives medical treatment away from the scene of the accident.

The driver will be entitled to non-driving work during this period at his/her normal rate of pay.

The Employer and the Union mutually agree that the employee's rights to Union representation will be protected pursuant to Article 4 of the National Master UPS Agreement.

D000685

## Section 22. Incompatible Package Handling

The Employer agrees that all irregular or incompatible packages such as bars, buckets, exposed metal parts, tire rims, etc., shall be given special handling in accordance with UPS handling methods and local conditions.

## Section 23. Union Liability

Nothing in the Agreement or its Supplements relating to health, safety or training rules or regulations shall create or be construed to create any liability or responsibility on behalf of the Union for any injury or accident to any employee or any person or does the Union assume any such liability or responsibility.

The Union will not commence legal action against the Union, on a subrogation theory, contribution theory, or otherwise, as a result of the Union's negotiation of safety standards contained in this Agreement or failure to properly investigate or follow-up Employer compliance with those safety standards.

## ARTICLE 19. POSTING

The Employer agrees to supply and provide suitable space for the Union bulletin board in each center, hub, or place of work. Postings by the Union on such board are to be confined to official business of the Union and on the Union's official letterhead or TITANS. In each package center there shall be a covered bulletin board. Union Stewards shall have a key for the Union bulletin boards. The Employer shall not remove, tamper with or alter any notice posted by the Union unless such notice is harmful to the Employer. Any such notice removed by the Employer shall be re-posted if the Union's position is sustained through the grievance procedure.

## ARTICLE 20. EXAMINATION AND IDENTIFICATION FEES

## Section 1. Required Examination

Physical, mental or other examinations required by a government body or the Employer shall be promptly complied with by all

employees; provided, however, the Employer shall not pay for any time spent in the case of applicants for jobs, but shall be responsible to other employees only for time spent at the place of examination or examinations where the time spent by the employee exceeds two (2) hours, and in that case only for those hours in excess of said two (2). Examinations are to be taken at the employee's home area and are not to exceed one (1) in any one (1) year, unless the employee has suffered serious injury or illness within the year. Employees will not be required to take examinations during their working hours, unless paid by the Employer for all time spent. Employees shall be given reasonable notice of dates of examinations.

For those drivers subject to DOT regulations who possess a valid medical certificate from a designated DOT provider, the Employer shall pay for any additional physical, mental, or other examinations required by the Employer to confirm the validity of the medical certificate.

## Section 2.   Return to Work Examination

It is understood by the Employer and the Union that once an employee notifies the Employer that he/she has been released to return to work by the employee's doctor, the Company doctor must examine the employee within three (3) working days from the time the employee brings the return-to-work slip to the Employer.

## Section 3.  Third Doctor Procedure

The Employer reserves the right to select its own medical examiner or doctor and the Union may, if it believes an injustice has been done an employee, have said employee re-examined at the employee's expense. If the two (2) doctors disagree, the Employer and the Union shall mutually agree upon a third (3rd) doctor within ten (10) working days, whose decision shall be final and binding on the Employer, the Union and the employee. Neither the Employer nor the Union will attempt to circumvent the decision of the third (3rd) doctor and the expense of the third doctor shall be equally divided between the Employer and the Union.

D000691

If the third (3rd) doctor agrees that the employee should be returned to work, the employee shall be reimbursed at his/her daily guarantee, less any other monies received back to the date of the examination by the Company doctor. It shall exclude any time the employee was not available for examination or work.

## Section 4. Disqualified Driver – Alternative Work

Except as provided for in Article 16, a driver who is judged medically unqualified to drive, but is considered physically fit and qualified to perform other inside jobs, will be afforded the opportunity to displace the least senior full-time or part-time inside employee at such work until he/she can return to his/her driving job unless otherwise provided for in the Supplements, Riders or Addenda. While performing the inside work, the driver will be paid the highest part-time rate as an employee with equivalent seniority or current area practice. If no full-time inside position is available, the Employer will meet with the Local Union to develop a full-time position, if possible out of available work.

## Section 5. Identification

Should the Employer find it necessary to require employees to carry or record full personal identification, such requirements shall be complied with by the employees. The cost of such personal identification shall be borne by the Employer.

All management personnel shall wear a nametag identifying them as supervision while on duty.

## ARTICLE 21. UNION ACTIVITY

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business, nor shall there be any discrimination against any employee because of union membership or activities. Any employee shall have the right to wear a Union pin where there is a practice affording such a right.

- 60 -

## ARTICLE 22.   PART-TIME EMPLOYEES

## Section 1.

No part-time employee shall drive except:

(a) when no full-time employee or combination full-time employee is on the premises;

(b) to avoid delay in the work; or,

(c) as provided for in Article 40 Air Operation.

## Section 2.

The number of permanent full-time inside jobs in each Local Union area as of April 30, 1979, shall be guaranteed from replacement by part-time employees. In addition, the number of permanent full-time inside jobs created after April 30, 1979, under the provisions of Section 3 will also be guaranteed from replacement by part-time employees. The exception to the above will be in cases of bona fide agreements prior to the ratification of this Agreement.

## Section 3.

The parties agree that providing part-time employees the opportunity to become full-time employees is a priority of this Agreement. Accordingly, the Employer commits that during the life of this Agreement, it will offer part-time employees the opportunity to fill at least twenty thousand (20,000) permanent full-time job openings throughout its operations covered by this Agreement.

This commitment shall include the obligation to create at least ten thousand (10,000) new full-time jobs from existing part-time jobs during the life of this Agreement throughout its operations covered by this Agreement; two thousand five hundred (2500) jobs during each year beginning in the third year of this Agreement. The Employer shall, wherever possible, reschedule

- 61 -

D000692

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PEGGY YOUNG | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.:  DKC 08 CV 2586 |
| | ) |
| UNITED PARCEL SERVICE OF AMERICA, INC., | ) |
| | ) |
| UNITED PARCEL SERVICE, INC., | ) |
| Defendants. | ) |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, and L.R. 104, Plaintiff, by her undersigned attorney, propounds these Interrogatories, to which Defendants shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Instructions and Definitions set forth hereinafter.

## INSTRUCTIONS AND DEFINITIONS

The Uniform Instructions and Definitions For Use in Discovery Requests are incorporated herein.

## INTERROGATORIES

1.      Standard Interrogatory No. 6: Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.

2.      Standard Interrogatory No. 7: If you have knowledge of any person carrying on an insurance business that might be liable to satisfy part or all of a judgment



EXHIBIT

tabbies®

2

that might be entered in this action or to indemnify or reimburse the payments made to satisfy the judgment, identify that person and state the applicable policy limits of any insurance agreement under which the person might be liable.

3.      Standard Interrogatory No. 10: State the facts concerning the matters alleged in paragraph 31 of your Answer to the Complaint, including specific detail regarding the "substantial percentage" of the packages that Plaintiff typically delivered that weighed less than 20 pounds, including in your answer the actual percentage of packages and the total number of deliveries that Plaintiff made that weighed in excess of 20 pounds, including the total weight of each such delivery.

4.      Standard Interrogatory No. 11: State the factual basis for your affirmative defenses nos. 3, 7, 8, 10, 11, 12, 19, and 21.

### OTHER INTERROGATORIES

5.      Identify the person/s who delivered packages that Plaintiff would have delivered had she continued to work her normal shifts from October 11, 2006, through June 26, 2007.

6.      Identify the persons that UPS has employed at the worksite where Plaintiff worked from January 1, 2006, through December 31, 2007, including in your answer the race and job title of each person, and whether that person has ever taken leave from UPS related to pregnancy and/or childbirth.

7.      Identify all persons above Plaintiff in the chain of command at any time from January 1, 2006, through December 31, 2007, including the job titles for each such person.

8.      Identify all employees that UPS has permitted to go on light duty from

January 1, 2002, through December 31, 2007, and state the reason that that person

was permitted to go on light duty.

9.      Identify each employee from January 1, 2003, through December 31,

2007, who, for any period of time, has failed to be certified as a driver through the

Department of Transportation, state the reason the employee failed to be certified as a

driver, and describe what work that employee performed during the period that the

employee failed to be certified as a driver through the Department of Transportation.

Respectfully submitted,

Sharon Fast Gustafson
Virginia Bar No. 32800
4041 North 21st Street
Arlington, Virginia 22207-3040
(703) 527-0147 telephone
(703) 527-0582 telefacsimile
sf.gustafson@verizon.net

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that the foregoing First Set of Interrogatories was mailed to counsel for
Defendants this 15th day of December 2008 at the following address:

Emmett F. McGee, Esquire
DLA Piper
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

PEGGY YOUNG                              )
                                         )
       v.                                )   Civil Action No.:  DKC 08 CV 2586
                                         )
UNITED PARCEL SERVICE, INC.,             )
                                         )

### PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, and L.R. 104, Plaintiff propounds these

Interrogatorries, to which Defendants shall respond fully, in writing and under oath,

within the time prescribed by the Federal Rules of Civil Procedure, in accordance with

the Uniform Instructions and Definitions For Use in Discovery Requests, which are

incorporated herein.

### INTERROGATORIES

10.     State the correct spelling of the names, the home addresses, the

telephone numbers, and the job titles of the following UPS employees:

       Patricia Arline-Young
       Mia Johnson
       Jade' Kristen
       Quatrice Pendleton
       Faye Reyna
       Carol "Cece" Richardson
       Ty Williams

11.     State all that is known about the factual basis for the defenses numbered
3, 7, 8, 10, 11, 12, 19, and 21 in your Answer to the Complaint.

                           Respectfully submitted,

                           Sharon Fast Gustafson
                           Virginia Bar No. 32800
                           4041 North 21st Street
                           Arlington, Virginia 22207-3040

EXHIBIT
3

(703) 527-0147 telephone
(703) 527-0582 telefacsimile
sf.gustafson@verizon.net

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that the foregoing Second Set of Interrogatories was mailed to counsel

for Defendants this 27th day of January 2009 at the following address:

Emmett F. McGee, Esquire
DLA Piper
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

PEGGY YOUNG                                    )
                                               )
          v.                                   )   Civil Action No.:  DKC 08 CV 2586
                                               )
UNITED PARCEL SERVICE, INC.,                   )

## PLAINTIFF'S THIRD SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, and L.R. 104, Plaintiff propounds this Interrogatory, to which Defendants shall respond fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Uniform Instructions and Definitions For Use in Discovery Requests, which are incorporated herein.

## INTERROGATORY

12.    Identify all UPS employees who worked from UPS's Landover, Maryland, facilities from January 1, 2003, through December 31, 2007, (including in your answer the race and job title of each person) who took short-term disability leave from UPS, and state the dates of the leave.

Respectfully submitted,

Sharon Fast Gustafson
Virginia Bar No. 32800
4041 North 21st Street
Arlington, Virginia 22207-3040
(703) 527-0147 telephone
(703) 527-0582 telefacsimile
sf.gustafson@verizon.net

Attorney for Plaintiff

EXHIBIT
tabbies'
4

## CERTIFICATE OF SERVICE

I certify that the foregoing Third Set of Interrogatories was mailed to counsel for

Defendants this 30th day of January 2009 at the following address:

Emmett F. McGee, Esquire
DLA Piper
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**PEGGY YOUNG**

    **Plaintiff**

 **vs.**

              **Civil Action No. DKC 08 CV 2586**

**UNITED PARCEL SERVICE INC.**

    **Defendant**

## DEFENDANT UNITED PARCEL SERVICE, INC.'S RESPONSES
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

  Pursuant to Federal Rule of Civil Procedure 33(b), Defendant, United Parcel Service, Inc. ("UPS" or "Defendant"), by its undersigned counsel, hereby responds to Plaintiff's First Set of Interrogatories as follows:

### INTRODUCTION

  UPS's Responses To Plaintiff's First Set of Interrogatories are made in accordance with the applicable Federal Rules of Civil Procedure.  In the event that any portion of the instructions and definitions contained in Plaintiff's First Set of Interrogatories conflicts with the applicable federal rules, or attempts to impose requirements beyond those imposed by the applicable federal rules, the applicable federal rules and their requirements shall prevail.  Where appropriate, Defendant may refer Plaintiff to Defendant's business records in response to interrogatories as provided for in Rule 33(d) of the Federal Rules of Civil Procedure.



**EXHIBIT**

tabbies

_5_

## GENERAL OBJECTIONS AND CONDITIONS

A.     The information contained herein is not based solely upon the knowledge of the executing individual, but comes from various sources, including the knowledge of Defendant's agents, representatives and attorneys, unless privileged.  It represents the best information available at this time, but Defendant reserves the right to supplement or change its responses based on additional information which may become available to it.  The word usage and sentence structure contained herein is that of the attorneys who prepared these responses, and said language does not purport to be the exact language of the executing individual.

B.     Some information may be responsive to more than one interrogatory.  Whenever such information is furnished in response to one interrogatory, that information also is being furnished in response to other pertinent interrogatories, although not specifically mentioned in the answers to those interrogatories.

C.     Discovery of Documents.  A variety of documents will be produced to Plaintiff by Defendant in response to Plaintiff's document requests.  To the extent that the interrogatories request Defendant to identify, index, summarize or report the contents of documents which will be produced, Defendant objects to the interrogatories because the discovery sought is unreasonably cumulative and duplicative, and because the information sought can be obtained in a more convenient, less burdensome and less expensive manner by simply reviewing the documents themselves.

D.     Impropriety of Discovery Method.  Any attempt by Defendant to interrogate all of its own employees or others on all matters raised in the interrogatories, and to summarize their

responses, would be unreasonably time consuming and burdensome. Defendant objects to the interrogatories to the extent that they purport to require Defendant to engage in such a task.

E.     Supplementation of Responses.     Rule 26(e) of the Federal Rules of Civil Procedure governs the duty of a party to supplement responses to interrogatories. To the extent that the interrogatories seek to vary or add to the requirements of Rule 26(e), Defendant objects. However, Defendant reserves the right to supplement or amend its responses should additional information called for by the interrogatories be discovered.

F.     Attorney-Client Privilege. Defendant objects to all of the interrogatories to the extent they seek discovery of information protected by the attorney-client privilege, the work product doctrine and/or other relevant privileges.

G.     Confidential Information. Defendant objects to Plaintiff's interrogatories to the extent they seek discovery of irrelevant, confidential, and/or personal information concerning employees and former employees not parties to this suit, as well as other confidential information relating to Defendant's business and operation. If any such information is requested, and is relevant, Defendant may consider providing it in accordance with, and subject to, the entry by the Court of an appropriate Protective Order Regarding the Exchange and Use of Confidential Information.

H.     Irrelevant Information.     Insofar as these interrogatories seek documents or information outside of the work location within which Plaintiff was employed, Defendant objects to them as irrelevant and not likely to lead to the discovery of relevant information and as unduly burdensome. Unless otherwise noted, Defendant's responses will be limited to the work location

3

within which Plaintiff was employed: Metro 2000 Center located at 8440 Ardwick Ardmore Road, Landover, Maryland, 20785.

I.      Unless otherwise provided herein, any and all objections set forth herein are intended and should be understood to state a refusal by Defendant to provide any response beyond that set forth herein.

The foregoing General Objections are incorporated by reference into the following responses to each of the interrogatories.  The following responses are made subject to, and without waiving, the foregoing General Objections, as well as the specific objections stated below.

## RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Interrogatory No. 1**:  Standard Interrogatory No. 6:  Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.

**Response to Interrogatory No. 1:**

Defendant objects to Interrogatory No. 1 to the extent that it seeks the disclosure of the thought processes of Defendant's attorneys and other attorney work product, and addresses issues of law that are not appropriate subjects for discovery.  Defendant also objects to Interrogatory No. 1 as being unduly burdensome to the extent it seeks to require Defendant to interview every employee or a large segment of employees to determine what, if any, knowledge they may have.

Subject to and without waiving the foregoing objections, Defendant states that the following individuals may have knowledge regarding some or all of the employment policies in effect in the District in which Plaintiff is employed:

4

(1)     James Lott.  Mr. Lott is employed by Defendant in the position of District Human Resources Manager, and may be contacted through undersigned counsel for Defendant.

(2)     Frankie McDonnell.  Ms. McDonnell is employed by Defendant in the position of District Employee Relations Manager, and may be contacted through undersigned counsel for Defendant.

(3)     Eric Bringe.  Mr. Bringe is employed by Defendant in the position of District Labor Relations Manager, and may be contacted through undersigned counsel for Defendant.

(4)     Barry Carpenter.  Mr. Carpenter is employed by Defendant in the position of MDC Labor Relations Manager, and may be contacted through undersigned counsel for Defendant

In addition, Defendant states that the following individuals may have knowledge regarding Plaintiff's position at UPS and/or her leaves of absence from UPS:

(1)     Myron Williams.  Mr. Williams is employed by Defendant in the position of Director of Business Development, and may be contacted through undersigned counsel for Defendant.

(2)     Ursula Blunt.  Ms. Blunt is employed by Defendant in the position of Pre-Load Dispatch Supervisor, and may be contacted through undersigned counsel for Defendant.

(3)     Steve Duca.  Mr. Duca is employed by Defendant in the position of Business Manager, and may be contacted through undersigned counsel for Defendant.

(4)     Carol Martin.  Ms. Martin is employed by Defendant in the position of Metro DC

Occupational Health Manager, and may be contacted through undersigned counsel for

Defendant.

In addition to the above individuals, Plaintiff also has knowledge regarding the facts

alleged in the Complaint.

**Interrogatory No. 2:**  Standard Interrogatory No. 7:  If you have knowledge of any
person carrying on an insurance business that might be liable to satisfy part or all of a judgment
that might be entered in this action or to indemnify or reimburse the payments made to satisfy
the judgment, identify that person and state the applicable policy limits of any insurance
agreement under which the person might be liable.

**Response to Interrogatory No. 2:**   Defendant has no information responsive to

Interrogatory No. 2.

**Interrogatory No. 3:**  Standard Interrogatory No. 10:  State the facts concerning the
matters alleged in paragraph 31 of your Answer to the Complaint, including specific detail
regarding the "substantial percentage" of the packages that Plaintiff typically delivered that
weighed less than 20 pounds, including in your answer the actual percentage of packages and the
total number of deliveries that Plaintiff made that weighed in excess of 20 pounds, including the
total weight of each such delivery.

**Response to Interrogatory No. 3:**  Defendant objects to Interrogatory No. 3 as unduly

burdensome, and also because it seeks irrelevant information and is not likely to lead to the

discovery of relevant information, inasmuch as it refers to matters that were not raised in

Plaintiff's EEOC Charge and, as a result, are not at issue in this case.  Plaintiff's EEOC Charge

of Discrimination was based on the claim that Plaintiff requested a light duty job assignment but

UPS failed to grant her request for a light duty job.  There was no claim that Plaintiff sought to

work in her regular job as a delivery driver or that UPS prevented her from returning to work in

her regular job.  Accordingly, the nature of work in her regular job, including the weight of

packages that she delivered, is not at issue and is irrelevant. Defendant further objects to Interrogatory No. 3 to the extent that it seeks confidential information regarding Defendant's business operations.

**Interrogatory No. 4:** Standard Interrogatory No. 11: State the factual basis for your affirmative defenses nos. 3, 7, 8, 10, 11, 12, 19 and 21.

**Response to Interrogatory No. 4:** Defendant objects to Interrogatory No. 4 to the extent that it seeks the production of information that is covered by the attorney-client privilege, the attorney work product doctrine, or that is otherwise privileged or to the extent that it improperly invades the mental impressions, conclusions, opinions and legal theories of Defendant's attorneys. Furthermore, Defendant objects to this Request to the extent that it seeks confidential information.

Subject to and without waiving the foregoing objections, Defendant states as follows:

(1)    Under law, Plaintiff was required to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the events alleged in her Complaint.

(2)    Plaintiff raises several new claims in her Complaint that were not included in her EEOC Charge of Discrimination.

(3)    Plaintiff's Complaint includes matters originally addressed in the lawsuit she filed against UPS in the United States District Court for the Eastern District of Virgina, which the parties have settled.

(4)     At all times during the period covered by Plaintiff's Complaint, Defendant acted in accordance, and in good faith, with applicable laws and regulations as concerns Plaintiff's request for a light duty work assignment.

(5)     To the extent that Plaintiff suffered any harm as alleged in the Complaint, Plaintiff's own conduct is responsible for such harm in that she requested a light duty assignment.

**Interrogatory No. 5:**  Identify the person/s who delivered packages that Plaintiff would have delivered had she continued to work her normal shifts from October 11, 2006, through June 26, 2007.

**Response to Interrogatory No. 5:**  Defendant objects to Interrogatory No. 5 as unduly burdensome, and also because it seeks irrelevant information and is not likely to lead to the discovery of relevant information, inasmuch as it refers to matters that were not raised in Plaintiff's EEOC Charge and, as a result, are not at issue in this case.  Plaintiff's EEOC Charge of Discrimination was based on the claim that Plaintiff requested a light duty job assignment but UPS failed to grant her request for a light duty job.  There was no claim that Plaintiff sought to work in her regular job as a delivery driver or that UPS prevented her from returning to work in her regular job.  Accordingly, the nature of work in her regular job, including the weight of packages that she delivered, is not at issue and is irrelevant.  Defendant also objects to this Interrogatory because it calls for speculation; it is impossible to know what deliveries Plaintiff would have made on a particular day that Plaintiff did not work.  Defendant further objects to Interrogatory No. 3 to the extent that it seeks confidential information regarding Defendant's business operations.

**Interrogatory No. 6:** Identify the persons that UPS has employed at the worksite where Plaintiff worked from January 1, 2006, through December 31, 2007, including in your answer the race and job title of each person, and whether that person has ever taken leave from UPS related to pregnancy and/or childbirth.

**Response to Interrogatory No. 6:** Defendant objects to Interrogatory No. 6 on the ground that it is vague and inscrutable in that it is unclear what Plaintiff means by "worksite." Defendant also objects because the Interrogatory is overly broad, seeks irrelevant information and is unduly burdensome. There is no conceivable relevance to the name and address of every person who ever worked for UPS at any time over a two-year period, and the Interrogatory is clearly posed for the purposes of harassing UPS, and not for any legitimate purpose. Defendant further objects to Interrogatory No. 6 to the extent that it seeks private and confidential information regarding employees who are not a party to this lawsuit.

**Interrogatory No. 7:** Identify all persons above Plaintiff in the chain of command at any time from January 1, 2006, through December 31, 2007, including the job titles for each such person.

**Response to Interrogatory No. 7:** Defendant objects to Interrogatory No. 7 on the ground that it is vague and inscrutable in that it is unclear what Plaintiff means by "chain of command." Defendant also objects to Interrogatory No. 7 as irrelevant and not likely to lead to the discovery of relevant information and as unduly burdensome, to the extent that it seeks information outside of the work location within which Plaintiff was employed. Defendant further objects to Interrogatory No. 7 to the extent that it calls for confidential information regarding employees who are not a party to this lawsuit.

Subject to and without waiving the foregoing objections, Defendant states that the following employees had supervisory or management responsibilities over Plaintiff's position in

9

the Metro 2000 Center located at 8440 Ardwick Ardmore Road, Landover, Maryland, 20785, within the period of time beginning January 1, 2006 and ending December 31, 2007:

(1)     Eugene Agbebaku.  Mr. Agbebaku was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor.  Mr. Agbebaku is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(2)     Kevin Bankett.  Mr. Bankett was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Division Manager. Mr. Bankett is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(3)     Ursula Blunt.  Ms. Blunt was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Ms. Blunt is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(4)     Christopher Breslin.  Mr. Breslin was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Breslin is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(5)     Timberly Davis.  Ms. Davis was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor.

Ms. Davis is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(6)     Mike Farrell.   Mr. Farrell was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Farrell is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(7)     Dave Guzinski.  Mr. Guzinski was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of District Operations Manager.   Mr. Guzinski is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(8)     Jim Hale.  Mr. Hale was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Business Manager.  Mr. Hale is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(9)     Jim Harris.  Mr. Harris was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Business Manager.  Mr. Harris is a former employee of UPS and may be contacted through undersigned counsel for Defendant.

(10)    Larry Hutchison.  Mr. Hutchison was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of District Operations Manager.   Mr. Hutchison is a former employee of UPS and may be contacted through undersigned counsel for Defendant.

(11)    Brian Kelly. Mr. Kelly was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position On Car Supervisor. Mr. Kelly is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(12)    Mark Knauss. Mr. Knauss was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Air Supervisor. Mr. Knauss is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(13)    Edward Ludlow, Jr. Mr. Ludlow was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Ludlow is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(14)    Kelley McCreesh. Ms. McCreesh was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Ms. McCreesh is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(15)    John McFadden. Mr. McFadden was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Pre-Load Dispatch Supervisor. Mr. McFadden is a former employee of UPS and may be contacted through undersigned counsel for Defendant.

(16)    William Riggins, Jr. Mr. Riggins was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor.

Mr. Riggins is a former employee of UPS and may be contacted through undersigned counsel for Defendant.

(17)   Angela Strand.  Ms. Strand was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Pre-Load Dispatch Supervisor. Ms. Strand is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(18)   Joe Tringale.  Mr. Tringale was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of District Manager. Mr. Tringale is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(19)   Myron Williams.  Mr. Williams was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Division Manager. Mr. Williams is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(20)   Teresa Wade.  Ms. Wade was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Ms. Wade is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

(21)   Kent Wright.  Mr. Wright was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor.

Mr. Wright is a current employee of UPS and may be contacted through undersigned counsel for Defendant.

**Interrogatory No. 8:**  Identify all employees that UPS has permitted to go on light duty from January 1, 2002, through December 31, 2007, and state the reason that that person was permitted to go on light duty.

**Response to Interrogatory No. 8:**  Defendant objects to Interrogatory No. 8 on the ground that it is vague and inscrutable in that it is unclear what Plaintiff means by "go on light duty." Defendant further objects to Interrogatory No. 8 as irrelevant and not likely to lead to the discovery of relevant information and as unduly burdensome, to the extent that it seeks (A) information outside of the work location within which Plaintiff was employed and (B) information beyond the period of time relevant to Plaintiff's claims. Defendant also objects to Interrogatory No. 8 as irrelevant and not likely to lead to the discovery of relevant information to the extent that it seeks information regarding employees not subject to the Collective Bargaining Agreement that governed the terms and conditions of her employment with Defendant. In addition, Defendant objects to Interrogatory No. 8 to the extent that it calls for confidential information regarding employees who are not a party to this lawsuit.

Subject to and without waiving the foregoing objections, Defendant states that it is not aware of any bargaining-unit employee who worked in the Metro 2000 Center located at 8440 Ardwick Ardmore Road, Landover, Maryland, 20785, who was given an alternative light-duty assignment for a reason other than a work-related injury or an accommodation for a disability under the Americans with Disabilities Act ("ADA") during the period of time starting January 1, 2006 and ending December 31, 2007.

**Interrogatory No. 9:**  Identify each employee from January 1, 2003, through December 31, 2007, who, for any period of time, has failed to be certified as a driver through the Department of Transportation, state the reason the employee failed to be certified as a driver, and describe what work that employee performed during the period that the employee failed to be certified as a driver through the Department of Transportation.

**Response to Interrogatory No. 9:**  Defendant objects to Interrogatory No. 9 as irrelevant and not likely to lead to the discovery of relevant information and as unduly burdensome. Defendant further objects to Interrogatory No. 9 to the extent that it seeks information outside of the work location within which Plaintiff was employed.  The underlying EEOC Charge included no claim that Plaintiff failed to be certified as a driver, and that, therefore, is not an issue in this case.  Defendant also objects to Interrogatory No. 9 to the extent that it calls for private and confidential information regarding employees who are not a party to this lawsuit.

As to the Responses:

## VERIFICATION

I, James Lott, hereby declare, under penalty of perjury, that I am the District Human Resources Manager of United Parcel Service, Inc. and that I sign the foregoing Defendant United Parcel Service, Inc.'s Responses to Plaintiff's First Set of Interrogatories for and on behalf of United Parcel Service, Inc., and that I am duly authorized to do so; that all of the matters stated above are not within my personal knowledge and that I have been informed that there is no single officer or employee of United Parcel Service, Inc. who has personal knowledge of all such matters; that the facts stated above have been assembled by counsel for United Parcel Service, Inc., and that to the best of my knowledge, the facts stated in the foregoing Responses are true and represent the best information available at the time that the Responses were prepared.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of January, 2009, a copy of the foregoing Defendant United Parcel Service, Inc.'s Responses to Plaintiff's First Set of Interrogatories was sent via United States Mail, first-class, postage prepaid, to:

> Sharon Fast Gustafson, Esquire
> 4041 North 21st Street
> Arlington, VA 22207-3040

*Counsel for Plaintiff, Peggy Young*

Eric L. Sherbine
*Counsel for Defendant, United Parcel Service, Inc.*

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

PEGGY YOUNG

    **Plaintiff**

 **vs.**

            **Civil Action No. DKC 08 CV 2586**

UNITED PARCEL SERVICE INC.

    **Defendant**

**DEFENDANT UNITED PARCEL SERVICE, INC.'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

   Pursuant to Federal Rule of Civil Procedure 33(b), Defendant, United Parcel Service, Inc. ("UPS" or "Defendant"), by its undersigned counsel, hereby submits this Supplemental Response to Plaintiff's First Set of Interrogatories and states as follows:

**INTRODUCTION**

   UPS's Supplemental Response To Plaintiff's First Set of Interrogatories is made in accordance with the applicable Federal Rules of Civil Procedure.  In the event that any portion of the instructions and definitions contained in Plaintiff's First Set of Interrogatories conflicts with the applicable federal rules, or attempts to impose requirements beyond those imposed by the applicable federal rules, the applicable federal rules and their requirements shall prevail.  Where appropriate, Defendant may refer Plaintiff to Defendant's business records in response to interrogatories as provided for in Rule 33(d) of the Federal Rules of Civil Procedure.



EXHIBIT

tabbies®

6

## GENERAL OBJECTIONS AND CONDITIONS

A.     The information contained herein is not based solely upon the knowledge of the executing individual, but comes from various sources, including the knowledge of Defendant's agents, representatives and attorneys, unless privileged.   It represents the best information available at this time, but Defendant reserves the right to supplement or change its responses based on additional information which may become available to it.  The word usage and sentence structure contained herein is that of the attorneys who prepared these responses, and said language does not purport to be the exact language of the executing individual.

B.     Some information may be responsive to more than one interrogatory.  Whenever such information is furnished in response to one interrogatory, that information also is being furnished in response to other pertinent interrogatories, although not specifically mentioned in the answers to those interrogatories.

C.     Discovery of Documents.  A variety of documents will be produced to Plaintiff by Defendant in response to Plaintiff's document requests.  To the extent that the interrogatories request Defendant to identify, index, summarize or report the contents of documents which will be produced, Defendant objects to the interrogatories because the discovery sought is unreasonably cumulative and duplicative, and because the information sought can be obtained in a more convenient, less burdensome and less expensive manner by simply reviewing the documents themselves.

D.     Impropriety of Discovery Method. Any attempt by Defendant to interrogate all of its own employees or others on all matters raised in the interrogatories, and to summarize their

2

responses, would be unreasonably time consuming and burdensome. Defendant objects to the interrogatories to the extent that they purport to require Defendant to engage in such a task.

E.    Supplementation of Responses.    Rule 26(e) of the Federal Rules of Civil Procedure governs the duty of a party to supplement responses to interrogatories. To the extent that the interrogatories seek to vary or add to the requirements of Rule 26(e), Defendant objects. However, Defendant reserves the right to supplement or amend its responses should additional information called for by the interrogatories be discovered.

F.    Attorney-Client Privilege.    Defendant objects to all of the interrogatories to the extent they seek discovery of information protected by the attorney-client privilege, the work product doctrine and/or other relevant privileges.

G.    Confidential Information.    Defendant objects to Plaintiff's interrogatories to the extent they seek discovery of irrelevant, confidential, and/or personal information concerning employees and former employees not parties to this suit, as well as other confidential information relating to Defendant's business and operation. If any such information is requested, and is relevant, Defendant may consider providing it in accordance with, and subject to, the entry by the Court of an appropriate Protective Order Regarding the Exchange and Use of Confidential Information.

H.    Irrelevant Information.    Insofar as these interrogatories seek documents or information outside of the work location within which Plaintiff was employed, Defendant objects to them as irrelevant and not likely to lead to the discovery of relevant information and as unduly burdensome. Unless otherwise noted, Defendant's responses will be limited to the work location

3

within which Plaintiff was employed: Metro 2000 Center located at 8440 Ardwick Ardmore Road, Landover, Maryland, 20785.

I.      Unless otherwise provided herein, any and all objections set forth herein are intended and should be understood to state a refusal by Defendant to provide any response beyond that set forth herein.

The foregoing General Objections are incorporated by reference into the following Supplemental Response, which is made subject to, and without waiving, the foregoing General Objections, as well as the specific objections stated below.

## SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**Interrogatory No. 4:**  Standard Interrogatory No. 11:  State the factual basis for your affirmative defenses nos. 3, 7, 8, 10, 11, 12, 19 and 21.

**Response to Interrogatory No. 4:**  Defendant objects to Interrogatory No. 4 to the extent that it seeks the production of information that is covered by the attorney-client privilege, the attorney work product doctrine, or that is otherwise privileged or to the extent that it improperly invades the mental impressions, conclusions, opinions and legal theories of Defendant's attorneys. Furthermore, Defendant objects to this Request to the extent that it seeks confidential information.

Subject to and without waiving the foregoing objections, Defendant states as follows:

Under law, Plaintiff was required to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the events alleged in her Complaint.

Plaintiff filed her charge of discrimination with the EEOC on or about September 4, 2007. Plaintiff's EEOC Charge of Discrimination was based on the claim that Plaintiff requested a light duty job assignment but UPS failed to grant her request for a light duty job. There was no claim that Plaintiff sought to work in her regular job as a delivery driver or that UPS prevented her from returning to work in her regular job.

Plaintiff raises several new claims in her Complaint that were not included in her EEOC Charge of Discrimination. In particular, she claims that she sought to work in her regular job as a delivery driver and that UPS prevented her from returning to work in her regular job.

More than 300 days have passed since the dates of the occurrences associated with these new claims and the filing of Plaintiff's Complaint.

Defendant has implemented a number of policies prohibiting violations of federal anti-discrimination laws, including, but not limited to, Title VII and the ADA. These policies were in effect at all times during the period covered by Plaintiff's Complaint.

At all times during the period covered by Plaintiff's Complaint, Defendant took steps to promote, and educate its employees about, the above-referenced policies.

At all times during the period covered by Plaintiff's Complaint, Defendant acted in accordance, and in good faith, with the above-referenced policies, as concerns Plaintiff's request for a light duty work assignment.

On or about February 4, 2008, Plaintiff filed a lawsuit in the United States District Court for the Eastern District of Virginia (Civil Action No. 1:08CV105) against Defendant. Plaintiff claimed, among other things, that Defendant's alleged failure to provide certain documents regarding UPS's medical and disability insurance plan resulted in the loss of Plaintiff's medical

benefits from July 15, 2006, to June 23, 2007, causing her to suffer damages including "the denial of claimed benefits and distress."

On or about June 20, 2008, Defendant and Plaintiff entered into a settlement agreement under which Plaintiff agreed to dismiss her lawsuit against UPS.

In her current lawsuit, Plaintiff seeks an alternative and/or additional remedy for the same factual transaction on which she based her earlier lawsuit.

In her Complaint, Plaintiff has taken a position with regard to her request for a light duty assignment and her lifting restriction that is different than the position she took in her EEOC Charge of Discrimination.

To the extent that Plaintiff suffered any harm as alleged in the Complaint, Plaintiff's own conduct is responsible for such harm.

Plaintiff informed UPS that she was under a lifting restriction and requested a light duty assignment.

In 2006, Plaintiff provided notes to UPS from her doctors stating that Plaintiff was currently pregnant and was restricted from lifting more than 20 pounds. Plaintiff's doctor also stated that Plaintiff was restricted from lifting more than 10 pounds after the first 20 weeks of her pregnancy.

Plaintiff now appears to allege that, contrary to the information in her doctor's note and the statements in her EEOC Charge, her doctor's lifting restriction was only a "recommendation" and that she was able to perform her regular job as a delivery driver.

**Interrogatory No. 7:** Identify all persons above Plaintiff in the chain of command at any time from January 1, 2006, through December 31, 2007, including the job titles for each such person.

**Response to Interrogatory No. 7:**  Defendant objects to Interrogatory No. 7 on the ground that it is vague and inscrutable in that it is unclear what Plaintiff means by "chain of command." Defendant also objects to Interrogatory No. 7 as irrelevant and not likely to lead to the discovery of relevant information and as unduly burdensome, to the extent that it seeks information outside of the work location within which Plaintiff was employed. Defendant further objects to Interrogatory No. 7 to the extent that it calls for confidential information regarding employees who are not a party to this lawsuit.

Subject to and without waiving the foregoing objections, Defendant states that the following employees had supervisory or management responsibilities over Plaintiff's position in the Metro 2000 Center located at 8440 Ardwick Ardmore Road, Landover, Maryland, 20785, within the period of time beginning January 1, 2006 and ending December 31, 2007:

(1)     Eugene Agbebaku.  Mr. Agbebaku was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor.  Mr. Agbebaku is a current employee of UPS, in the position of Hub Supervisor, and may be contacted through undersigned counsel for Defendant.

(2)     Kevin Bankett.  Mr. Bankett was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Division Manager.  Mr. Bankett is a current employee of UPS, in the position of Package Division Manager, and may be contacted through undersigned counsel for Defendant.

(3)     Ursula Blunt.  Ms. Blunt was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor.

7

Ms. Blunt is a current employee of UPS, in the position of Pre-Load & Dispatch Supervisor, and may be contacted through undersigned counsel for Defendant.

(4)     Christopher Breslin.  Mr. Breslin was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Breslin is a current employee of UPS, in the position of On-Road Supervisor, and may be contacted through undersigned counsel for Defendant.

(5)     Timberly Davis.  Ms. Davis was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Ms. Davis is a current employee of UPS, in the position of On-Road Supervisor, and may be contacted through undersigned counsel for Defendant.

(6)     Mike Farrell.  Mr. Farrell was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Farrell is a current employee of UPS, in the position of On-Road Supervisor, and may be contacted through undersigned counsel for Defendant.

(7)     Dave Guzinski.  Mr. Guzinski was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of District Operations Manager.  Mr. Guzinski is a current employee of UPS, in the position of District Operations Manager, and may be contacted through undersigned counsel for Defendant.

(8)     Jim Hale.  Mr. Hale was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Business Manager.  Mr. Hale is a current employee of UPS, in the position of Durham NC Business Manager, and may be contacted through undersigned counsel for Defendant.

8

(9)     Jim Harris. Mr. Harris was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Business Manager. Mr. Harris is a former employee of UPS. His last known address is 2510 Davidsonville Road, Gambrills, Maryland 21054. His last known telephone number is 301-437-2456.

(10)    Larry Hutchison. Mr. Hutchison was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of District Operations Manager. Mr. Hutchison is a former employee of UPS. His last known address is 2600 Prosser Ct., Raleigh, North Carolina, 27614. His last known telephone number is 919-556-4972.

(11)    Brian Kelly. Mr. Kelly was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position On Car Supervisor. Mr. Kelly is a current employee of UPS, in the position of On-Road Supervisor, and may be contacted through undersigned counsel for Defendant.

(12)    Mark Knauss. Mr. Knauss was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Air Supervisor. Mr. Knauss is a current employee of UPS, in the position of On-Road Supervisor, and may be contacted through undersigned counsel for Defendant.

(13)    Edward Ludlow, Jr. Mr. Ludlow was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Ludlow is a current employee of UPS, in the position of Preload Supervisor & Dispatch, and may be contacted through undersigned counsel for Defendant.

(14)    Kelley McCreesh. Ms. McCreesh was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car

Supervisor. Ms. McCreesh is a current employee of UPS, in the position of On-Road Supervisor, and may be contacted through undersigned counsel for Defendant.

(15) John McFadden. Mr. McFadden was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Pre-Load Dispatch Supervisor. Mr. McFadden is a former employee of UPS. His last known address is 214 Hall Drive, Hanover, Pennsylvania 17331. His last known telephone number is 717-637-3419.

(16) William Riggins, Jr. Mr. Riggins was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Riggins is a former employee of UPS. His last known address is 5005 Valley Road, Brooklyn Park, Maryland 21225. His last known telephone number is 410-789-5481.

(17) Angela Strand. Ms. Strand was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Pre-Load Dispatch Supervisor. Ms. Strand is a current employee of UPS, in the position of Preload & Dispatch Supervisor, and may be contacted through undersigned counsel for Defendant.

(18) Joe Tringale. Mr. Tringale was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of District Manager. Mr. Tringale is a current employee of UPS, in the position of District Manager, and may be contacted through undersigned counsel for Defendant.

(19) Myron Williams. Mr. Williams was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of Division Manager. Mr. Williams is a current employee of UPS, in the position of Director of Business Development – Northeast Region, and may be contacted through undersigned counsel for Defendant.

(20)    Teresa Wade.   Ms. Wade was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Ms. Wade is a current employee of UPS, in the position of Strategic Accounts Manager, and may be contacted through undersigned counsel for Defendant.

(21)    Kent Wright.   Mr. Wright was employed by UPS within the period of time beginning January 1, 2006 and ending December 31, 2007 in the position of On Car Supervisor. Mr. Wright is a current employee of UPS, in the position of Preload & Dispatch Supervisor, and may be contacted through undersigned counsel for Defendant.

As to the Responses:

## VERIFICATION

I, Frankie McDonnell, hereby declare, under penalty of perjury, that I am the District Employee Relations Manager of United Parcel Service, Inc. and that I sign the foregoing Defendant United Parcel Service, Inc.'s Supplemental Response to Plaintiff's First Set of Interrogatories for and on behalf of United Parcel Service, Inc., and that I am duly authorized to do so; that all of the matters stated above are not within my personal knowledge and that I have been informed that there is no single officer or employee of United Parcel Service, Inc. who has personal knowledge of all such matters; that the facts stated above have been assembled by counsel for United Parcel Service, Inc., and that to the best of my knowledge, the facts stated in the foregoing Supplemental Response are true and represent the best information available at the time that the Supplemental Response was prepared.

*Frankie McDonnell*

12

As to objections:

_Emmett F. McGee, Jr._

Emmett F. McGee, Jr.  (Federal Bar No. 08462)
Jill S. Distler (Federal Bar No. 26166)
Eric L. Sherbine (Federal Bar No. 28570)

DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland  21209-3600
*phone*  (410) 580-3000
*facsimile*  (410) 580-3001

*Attorneys for Defendant, United Parcel Service, Inc.*

Dated:  February 13, 2009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of February, 2009, a copy of the foregoing Defendant United Parcel Service, Inc.'s Supplemental Response to Plaintiff's First Set of Interrogatories was sent via United States Mail, first-class, postage prepaid, to:

Sharon Fast Gustafson, Esquire
4041 North 21st Street
Arlington, VA 22207-3040

*Counsel for Plaintiff, Peggy Young*

Emmett F. McGee, Jr.
*Counsel for Defendant, United Parcel Service, Inc.*