IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PEGGY YOUNG

     v.               :     Civil Action No. DKC-08-2586

UNITED PARCEL SERVICE
OF AMERICA, INC., et al.   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination action are: (1) a motion to dismiss for lack of subject matter jurisdiction (Paper 35) filed by Defendant United Parcel Service, Inc. ("UPS"); (2) a motion to clarify, motion for reconsideration in part, and request for hearing (Paper 25) filed by Plaintiff Peggy Young; (3) a motion for protective order (Paper 27) filed by Defendant; (4) a motion to leave to file a second amended complaint and request for hearing (Paper 30) filed by Plaintiff; and (5) a motion for sanctions filed by Defendant (Paper 42). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

## I. Background

Plaintiff Peggy Young, a Caucasian female, has been employed as an early morning driver by Defendant United Parcel Service ("UPS") since October 23, 1999. During the summer of

2005, Plaintiff was attempting to get pregnant through in vitro fertilization ("IVF").   Plaintiff was out of work on leave related to this pregnancy attempt.   In October 2005, Plaintiff suffered a miscarriage and returned to work.   Plaintiff thereafter had a second round of IVF treatments that were not successful.   In July 2006, Plaintiff went on unpaid leave to undergo another IVF process.   The IVF treatment was successful and Plaintiff became pregnant.

In October 2006, Plaintiff was ready to return to work. She provided a note to UPS Occupational Health Manager Carol Martin ("Martin") from her doctor stating, "Peggy Young is currently pregnant and due to deliver on or about May 2, 2007. Due to her pregnancy it is recommended that she not lift more than 20 pounds." (Paper 4 ¶ 14).   Martin replied that Plaintiff could not come back to work during her pregnancy because, due to the lifting restriction, Plaintiff could not perform the essential functions of her regular job as a driver.   Martin also told Plaintiff that she was not qualified to receive disability benefits because she was not disabled under the terms of the UPS health plan.   Martin further advised Plaintiff that she could not work because light duty positions were not available for pregnancy.   Such positions were only available to employees injured on the job or to employees with disabilities under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*

2

*seq.*   Plaintiff remained on unpaid leave of absence for the remainder of her pregnancy.   After the birth of her child in April 2007, Plaintiff returned to work as a driver in June 2007.

On July 23, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race, sex, and pregnancy.   The EEOC issued Plaintiff a right to sue letter on September 2, 2008.   Plaintiff filed this action on October 3, 2008 against UPS of America, Inc., UPS, Inc., UPS Health Program, Aetna Life Insurance, and Aetna Disability and Absence Management alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, and 42 U.S.C. § 1981.[1]   (Paper 1).   On October 29, 2008, Plaintiff filed an amended complaint against UPS, Inc. and UPS America, removing the ERISA claim and seeking damages and equitable relief for alleged violations of Title VII, the ADA, and § 1981.   (Paper 4).   Defendants filed an answer on December 8, 2008 (Paper 7), and a scheduling order was entered the same day.   (Paper 8).   Defendant UPS of America, Inc. was dismissed from the case on December 17, 2008.   (Paper 14).

---

[1] Defendants UPS Health Program, Aetna Life Insurance, and Aetna Disability and Absence Management were dismissed from the case on October 30, 2008.   (Paper 5).

Plaintiff served her First Set of Interrogatories and First Set of Document Requests on Defendants on December 15, 2008. Defendant responded on January 20, 2009. Defendant also served two supplemental responses to Plaintiff's First Set of Interrogatories and responded to Plaintiff's Second Set of Interrogatories. On May 14, 2009, Plaintiff filed a motion to compel responses to interrogatories and document requests. (Paper 18). On May 26, 2009, the court granted in part and denied in part Plaintiff's motion to compel. The same day, Plaintiff served on Defendant her notice of deposition pursuant to Fed.R.Civ.P. 30(b)(6) and scheduled UPS's deposition for June 9, 2009. Defendant's counsel, Ernest McGee, asserts that he informed Plaintiff's counsel that he was not available on June 9 and would need a considerable amount of time to prepare for the deposition. In response to Plaintiff's notice of deposition, Defendant filed a motion for protective order on June 3, 2009. (Paper 27). Plaintiff filed a motion for leave to file second amended complaint on June 6, 2009. (Paper 30). On June 10, 2009, Defendant filed a motion to modify amended scheduling order, requesting that the court extend discovery and dispositive pretrial motions deadlines to accommodate the scheduling of Defendant's 30(b)(6) deposition, the motion for protective order that Defendant filed in connection with that deposition, and the motion for leave to file a second amended

complaint.   (Paper 31).   The court granted Defendant's motion
and ordered that new deadlines would be set following resolution
of the pending motions.   (Paper 32).

## II.  Motion to Dismiss

### A.    Standard of Review

Motions to dismiss for lack of subject matter jurisdiction
are governed by Fed. R. Civ. P. 12(b)(1).   The plaintiff bears
the burden of proving that subject matter jurisdiction properly
exists in the federal court.   *See Evans v. B.F. Perkins Co., a
Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).
In a 12(b)(1) motion, the court "may consider evidence outside
the pleadings" to help determine whether it has jurisdiction
over the case before it.   *Richmond, Fredericksburg & Potomac
R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also
Evans*, 166 F.3d at 647.   The court should grant the 12(b)(1)
motion "only if the material jurisdictional facts are not in
dispute and the moving party is entitled to prevail as a matter
of law." *Richmond*, 945 F.2d at 768.

### B.    Analysis

In order for the court to hear certain types of employment-
related claims, a plaintiff must first exhaust her
administrative remedies.   Exhaustion of administrative remedies
requires that a plaintiff file a timely charge of discrimination
with the Equal Employment Opportunity Commission ("EEOC") and

receive, or be entitled to receive, a right to sue letter before filing a federal claim. 42 U.S.C. § 2000e-5(b), 16(c). "[T]he purpose of the exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Frank v. England*, 313 F.Supp.2d 532, 536 (D.Md. 2004)(quoting *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)). "[A] failure by the plaintiff to [first] exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). As explained by the United States Court of Appeals for the Fourth Circuit in *LaPorte v. Henderson*, 176 F.Supp.2d 464, 468-69 (4th Cir. 2001):

> Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires." *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986). Thus, where an agency or the EEOC requests information relevant to resolving the employee's complaint and the employee fails to provide that information, the employee has failed to exhaust his administrative remedies. *See Washington v. Nordstrom, Inc.*, 2001 WL 282699, *3 (D.Md. 2001)(concluding that plaintiff failed to exhaust administrative remedies when plaintiff failed to respond to EEOC's request for additional information regarding discrimination claims); *Crawford v. Babbitt*, 186 F.3d 1322, 1326-27 (11th Cir. 1999)(concluding that plaintiff failed to exhaust administrative remedies when plaintiff failed to provide information

relevant to claim for compensatory damages); *Barnes v. Levitt*, 118 F.3d 404, 408-10 (5th Cir. 1997) (stating that a claimant may not refuse to provide requested information, wait for 180 days to pass, and then invoke the jurisdiction of the federal court, because such a claimant has failed to exhaust his administrative remedies); *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999)("In order to exhaust administrative remedies, the claimant is required to demonstrate good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation.").

Defendant asserts that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff refused to cooperate meaningfully with the EEOC's administrative process and, as a result, has not exhausted her administrative remedies.  Specifically, Defendant contends that Plaintiff failed to submit the requested rebuttal to Defendant's position statement and, instead, requested a notice of right to sue from the EEOC.  Plaintiff responds, incorrectly, that exhaustion of administrative remedies is not a jurisdictional requirement.  Plaintiff further responds that the EEOC was unable to investigate her claim within the 180-day timetable.  Plaintiff insists that the EEOC ignored her requests to identify the EEOC investigator responsible for her claim and that she was unable to pursue her claim with the agency.

As noted above, Plaintiff filed a charge of discrimination with the EEOC on July 23, 2007.  Plaintiff subsequently filed an amended charge of discrimination in January 2008.  Plaintiff describes her remaining interaction with the EEOC as follows.  A mediation scheduled for March 2008 was canceled.[2]  Plaintiff's counsel emailed the EEOC in April, May, and June 2008 attempting to identify the EEOC investigator so that the investigator could schedule an interview with Plaintiff.  The emails were never answered and the identity of the EEOC investigator was not provided.  Plaintiff visited the EEOC in June 2008 attempting to identify her EEOC investigator, but did not succeed.  Plaintiff's counsel received from the EEOC on July 25, 2008 a letter enclosing a copy of UPS's position statement, and requesting that Plaintiff's attorney submit a written rebuttal no later than July 31, 2008.  By this time, Plaintiff's counsel concluded that the EEOC could not be relied on to conduct a diligent and timely investigation.  As a result, instead of submitting a written rebuttal, Plaintiff requested a notice of right to sue and filed this action on October 3, 2008.

---

[2] Defendant contends that mediation was scheduled for April 9, 2008 and did not occur because Plaintiff canceled, noting that "settlement at this time is unlikely and that mediation is therefore not in my client's best interest.  The mediation will increase Complainant's attorney's fees making any future settlement possibility even more difficult."  (Paper 42, Ex. 1, Gustafson Email).

Although Defendant insists that Plaintiff failed to pursue her claim before the EEOC, indeed Defendant appears to have caused the delay that prompted Plaintiff to pursue her claim in court instead of continuing the administrative process.   On October 30, 2007, Judy Cassell, Supervisory Investigator for the EEOC sent Plaintiff's counsel a letter outlining the next steps in the administrative process.  The letter explained:

> During the next 60-90 days, members to [sic] the Enforcement Team will be managing the initial part of the investigation.  First, followup will occur with the Respondent (employer) as to its position statement based on the allegations set forth in the charge of discrimination.  Second, upon receipt of the position statement, you will either be contacted by telephone to review the contents of the position statement or sent a copy of the position statement in order to allow you the opportunity to provide a rebuttal.  Third, once EEOC has received the position statement and your rebuttal (or the due date for your rebuttal has come and gone without receipt of a rebuttal from you), the case will be reviewed and assigned to an Investigator for further investigation.

(Paper 38, Ex. C).

The same day, Ms. Cassell sent Defendant a letter reminding Defendant that the EEOC had not yet received its position statement (initially requested October 4, 2007) and requesting Defendant's response to the charge of discrimination no later than November 16, 2007.  (*Id.* Ex. B).  The letter also informed Defendant that if it was interested in engaging in a settlement

conference, it must notify the EEOC by November 9, 2007.  There is no evidence that Defendant notified the EEOC of its interest to engage in a settlement conference before this deadline or of its intent not to file a position statement.   However, a settlement conference was scheduled for April 2008 and, and as noted above, Plaintiff decided not to participate in the settlement conference.   Plaintiff was not informed that attending the conference was mandatory and her decision not to attend was not fatal to her claim.  *Halasi-Schmick v. City of Shawnee, Kan.*, 759 F.Supp. 747, 750 (D.Kan. 1991)(finding that the plaintiff's failure to attend investigatory conference was not a "deliberate bypass" or "thwarting" of administrative proceedings and denying the defendant's motion for summary judgment on grounds that plaintiff has failed to exhaust administrative remedies).   Defendant did not file its position statement until June 11, 2008, nearly seven months after the EEOC's first request, and almost one year after Plaintiff's first charge of discrimination.   Plaintiff did not receive the position statement until July 25, 2008, over a year after filing her first charge.

Defendant cites a number of cases where the court held that the employee's abandonment of the discrimination claim resulted in a failure to exhaust administrative remedies.  *See, e.g.*, *Bell v. Manugistics Group, Inc.*, No. 06-941, 2006 WL 1494560

(D.Md. May 26, 2006)(stating a plaintiff's failure to provide rebuttal information during the course of a four year investigation constituted failure to exhaust administrative remedies); *LaPorte v. Henderson*, 176 F.Supp.2d 464, 468 (D.Md. 2001)(finding that a plaintiff's failure to provide evidence of emotional distress was tantamount to failure to exhaust administrative remedies), *aff'd*, 45 Fed.Appx. 250 (4th Cir. 2002)(unpublished); *Washington v. Nordstrom, Inc.*, 00-2522, 2001 WL 282699, at *2-3 (D.Md. Mar. 19, 2001)(finding that a plaintiff's unexplained failure to respond to two requests for information from the EEOC prevented investigation of her claims, resulting in dismissal for failure to exhaust administrative remedies).

The cases cited by Defendant are inapposite. None of these cases involve a plaintiff who decided to forego administrative proceedings because *the defendant* failed to cooperate meaningfully. "[T]his case does not fall within the ambit of those cases precluding suit in the district court by virtue of a final agency decision ensuing upon a claimant's own default." *McRae v. Librarian of Congress*, 843 F.2d 1494, 1496 (D.C. Cir. 1988). Rather, Plaintiff diligently pursued her claim in good faith, but after waiting nearly a year for a response from Defendant and not receiving any information from the EEOC regarding the investigator assigned to her claim, Plaintiff

11

decided to pursue her claim in court.   Accordingly, Defendant's
motion to dismiss for lack of subject matter jurisdiction will
be denied.

## III. Motion to Amend/Correct Amended Complaint

Plaintiff filed a motion for leave to file a second amended
complaint on June 6, 2009.   (Paper 30).   The scheduling order
unambiguously stated that all motions for amendment of pleadings
were due by January 22, 2009.   (Paper 16).   Plaintiff's motion
triggers both Fed.R.Civ.P. 15(a) governing amendment of
pleadings, and Fed.R.Civ.P. 16(b) governing modification of a
scheduling order.   Fed.R.Civ.P. 15(a) provides that leave to
amend "shall be freely given when justice so requires."
Fed.R.Civ.P. 16(b) governs the modification of a scheduling
order.   "[A]fter the deadlines provided by a scheduling order
have passed, the good cause standard must be satisfied to
justify leave to amend the pleadings." *Nourison Rug Corp. v.
Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).   The good cause
inquiry primarily "focuses on the timeliness of the amendment
and the reasons for its tardy submission" and in particular, on
"the diligence of the movant." *Rassoull v. Maximus, Inc.*, 209
F.R.D. 372, 374 (D.Md. 2002).

Plaintiff seeks to amend her complaint to add disparate
impact and disparate treatment claims under the Pregnancy
Discrimination Act.   Plaintiff asserts that she "learned through

discovery that UPS treats pregnant women less well . . . ." with regard to short-term disability benefits.   (Paper 30, at 7). Plaintiff seeks to amend her complaint to add a disparate treatment claim regarding short-term disability benefits.   In addition, Plaintiff asserts that, through discovery, she learned of an additional policy or practice that has a disparate impact on pregnant women: that UPS permits temporary or light duty or alternate work for employees who sustain on-the-job injuries or who fail the Department of Transportation exam due to medical conditions or who lose their driver's license because of an alcohol-related driving conviction.   (*Id.* at 8-9).   Plaintiff seeks to amend her complaint to add this disparate impact claim.

Plaintiff asserts that she included a disparate impact claim and a disparate treatment claim in her original and first amended complaints, and now she is merely amplifying these claims.   Plaintiff states that her original disparate impact claim consisted of the following factual allegations:

> 42. UPS maintains a pattern of discrimination in employment on the basis of sex . . . .
>
> 43. UPS has a requirement that early morning drivers – such as Ms. Young – must be able to lift 70 pounds.
>
> 44. As an early morning driver, Ms. Young's deliveries tended to be almost all light-weight envelopes of not more than a few pounds.   She almost never, if ever, was required to lift more than 20 pounds and

almost never, if ever, was required to lift 70 pounds.

45. The 70-pound requirement for early morning drivers does not accurately measure one's ability to perform the job and is not a business necessity for the position.

46. The 70-pound requirement for early morning drivers operates to discriminate against women, particularly pregnant women, and it discriminated against Ms. Young when she was pregnant.

(Paper 30, at 6)(citing Paper 1 ¶¶ 42-46; Paper 4 ¶¶ 29-33)(emphasis in original).

Defendant contends that the court does not have subject matter jurisdiction over Plaintiff's purported disparate impact claim because Plaintiff did not exhaust her administrative remedies. (Paper 27, Attach. 1, at 9-12). Defendant points out that Plaintiff's EEOC complaint did not contain any allegations to support a disparate impact claim. (Paper 27, Attach. 7).

Plaintiff's complaint is not a model of clarity and Defendant understandably concluded from her complaint and first amended complaint that she intended to bring a disparate treatment claim. In Plaintiff's original and first amended complaints, Plaintiff's mere mention of the seventy pound lifting requirement falls woefully short of pleading a disparate impact claim. While there are two theories of recovery under Title VII, disparate impact claims differ from disparate

14

treatment claims in many significant ways.  As noted by Judge Gregory:

> Disparate impact and disparate treatment are two legally distinct causes of action under Title VII. Disparate treatment requires the plaintiff to prove that the defendant had discriminatory intent or motivation. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). In contrast, disparate impact seeks to ferret out employment practices that are the functional equivalent of intentional discrimination because they cause significant adverse effects on protected groups, but have no deliberate discriminatory motive. *Id.* at 986-87, 108 S.Ct. 2777.

*Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 282-83 (4th Cir. 2005)(Gregory, J., dissenting in part).  Plaintiff's first amended complaint, which is not divided into separate counts or claims, does not contain the phrase "disparate impact."  Nor would such a claim survive a motion to dismiss for failure to exhaust administrative remedies, as Defendant argues in its motion for a protective order.  Each claim must be separately exhausted before being raised in a suit before the district court.  *See, e.g., Garrett v. Fed. Exp. Corp.*, 2008 W.L. 2365020 (N.D.Okla. 2008).  Thus, Plaintiff did not originally plead a disparate impact claim and her attempt to add any other disparate impact claim would be futile.

Additionally, Plaintiff knew or should have known that she had potential additional disparate treatment claims related to

her pregnancy discrimination claim when she filed her original complaint and first amended complaints.  Plaintiff's claims are grounded in the allegations that she was discriminated against as a result of her pregnancy.  Plaintiff reasons that she should be able to amend her complaint to include a new disparate treatment claim because she only recently obtained information, through discovery, regarding short-term disability benefits. Plaintiff knew, before discovery, that short-term disability benefits could be a possible issue in this case, because she had previously filed a lawsuit based on UPS not granting her short-term disability benefits.  *See*, *Young v. United States of America, Inc. et al.*, No. 08-cv-00105 (E.D.V.A. Feb. 4, 2008). Plaintiff has failed to show good cause for her undue delay in attempting to add this new claim, more than four months after the deadline for amendment of pleadings, especially in light of the prejudice that would inure to Defendant.  In fact, Plaintiff does not even address the good cause standard of Rule 16(b), which governs her motion under these circumstances. Accordingly, Plaintiff's motion for leave to file a second amended complaint will be denied.

## IV.  Motion to Clarify/Motion for Reconsideration

Plaintiff requests clarification of five aspects of the court's May 26, 2009 Memorandum Opinion.  Specifically, Plaintiff asks that the court make explicit that:

> (1) UPS shall have a deadline for producing the information the Court has compelled,
>
> (2) confidential information should not be redacted from UPS's production, in view of the Court's entry of the stipulated protective order,
>
> (3) that UPS must provide the available information as to the weight of the packages, and
>
> (4) that UPS must provide complete information about alternative work assignments.

(Paper 25, at 1). Additionally, Plaintiff asks the court to reconsider "that Plaintiff's complaint filed October 3, 2008 (and amended October 29, 2008), pleaded a cause of action under the Pregnancy Discrimination Act." (*Id.*).

Defendant counters that Plaintiffs' requests should be denied. First, Defendant argues that Plaintiff's request that UPS be required to respond to the court's Order by June 7, 2009 is unreasonable and overly burdensome. (Paper 33, at 3). Second, Defendant asserts that the court's May 27, 2009 stipulated protective order does not justify or require the disclosure of sensitive and confidential information, such as the identities or home addresses of Plaintiff's co-workers, to Plaintiff or her attorney. (*Id.* at 5-8). Third, Defendant contends that Plaintiff is not entitled to information regarding employees who were given alternative work assignments because they lost their ability to drive. (*Id.* at 8-10). Defendant

notes that the court limited the scope of Plaintiff's written discovery requests to those employees who have been given an alternative work assignment for an on-the-job injury or an accommodation under the ADA. (*Id.* at 8). Finally, Defendant argues that Plaintiff's request for a hearing should be denied because the court already determined that a hearing on the motion to compel was unnecessary.

The court's responses to Plaintiff's motion to clarify are as follows: First, Plaintiff's request to move up the production deadline is moot. Second, at this juncture, discovery regarding other employees who took pregnancy-related leave is being collected for the purpose of statistical information, so the parties' court-approved confidentiality agreement will not be modified as long as Defendant uses a letter or number identifier for each employee. If it becomes necessary at a later point for Plaintiff to gather confidential information regarding an employee's identity, the court will reconsider this issue. Third, Defendant will be directed to respond as to why it has or has not produced the six months' worth of data it has regarding the weight of the packages that Plaintiff delivered. Fourth, the court expressly stated that information regarding employees assigned to "inside jobs" because they lost their certification from the Department of Transportation and were unable to drive was irrelevant.

(Paper 19, at 15).   As stated before, Plaintiff's discovery requests will be limited to those employees who have been given an alternative work assignment for "light work" because of an on-the-job injury or an accommodation under the ADA.   Finally, Plaintiff pleaded a cause of action under the Pregnancy Discrimination Act in her complaint and amended complaint. Plaintiff's complaint and amended complaint cited 42 U.S.C. §§2000e *et seq.*   The Pregnancy Discrimination Act was added to Title VII as subsection (k).   After that amendment, pregnancy discrimination is considered a species of illegal sex discrimination.

The court has determined that a hearing on Plaintiff's motion is unnecessary, so Plaintiff's motion for a hearing will be denied.   Plaintiff's motion to clarify and motion for reconsideration in part will be granted in part and denied in part as stated herein.

V.   **Motion for Protective Order**

Fed.R.Civ.P. 30(b)(6) provides parties with the ability effectively to depose an entity regarding matters that are within its knowledge.   Rule 30(b)(6) states:

> A party may in the party's notice and in a
> subpoena name as the deponent a public or
> private corporation or a partnership or
> association or governmental agency and
> describe with reasonable particularity the
> matters on which examination is requested.
> In that event, the organization so named

> shall designate one or more officers,
> directors, or managing agents, or other
> persons who consent to testify on its
> behalf, and may set forth, for each person
> designated, the matters on which the person
> will testify.   A subpoena shall advise a
> non-party organization of its duty to make
> such a designation.    The persons so
> designated shall testify as to matters known
> or reasonably available to the organization.

The Fourth Circuit has explained that discovery requests

may, however, be limited:

> On its own initiative or in response to a
> motion for protective order under Rule
> 26(c), a district court may limit "the
> frequency or extent of use of the discovery
> methods otherwise permitted" under the
> Federal Rules of Civil Procedure if it
> concludes that "(i) the discovery sought is
> unreasonably cumulative or duplicative, or
> is obtainable from some other source that is
> more convenient, less burdensome, or less
> expensive; (ii) the party seeking discovery
> has had ample opportunity by discovery in
> the action to obtain the information sought;
> or (iii) the burden or expense of the
> proposed discovery outweighs its likely
> benefit."   Fed.R.Civ.P. 26(b)(2).   Further,
> upon motion of a party and "for good cause
> shown," the court [in which the action is
> pending or, on matters relating to a
> deposition,] in the district in which a
> deposition is to be taken may "make any
> order which justice requires to protect a
> party or person from annoyance,
> embarrassment, oppression, or undue burden
> or expense," including an order that the
> discovery not be had.   Fed.R.Civ.P. 26(c).

*Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir.

2004).

Plaintiff's deposition notice lists fifty-one different subject matters on which she seeks to require Defendant to designate representatives to testify.  Defendant has requested a protective order, pursuant to Fed.R.Civ.P. 26(c), to quash the deposition noticed by Plaintiff, on the ground that the notice is overly broad, unduly burdensome, seeks irrelevant information, and lacks the reasonable particularity required by Fed.R.Civ.P. 30(b)(6).  Defendant asserts that many of the listed subject matters are vague and ill-defined.  Defendant seeks a protective order limiting Plaintiff's inquiry into thirty-seven of the fifty-one subject matters Plaintiff has listed in its deposition notice.  Request numbers 24-35, 36-37, 39, 41-45, 48, and 50-51 are not in dispute.

The subjects into which Plaintiff may inquire in the 30(b)(6) deposition must not be overbroad and must be limited to a relevant time period, geographic scope, and related to claims for which Plaintiff has exhausted her administrative remedies.

First, some of the matters on which Plaintiff seeks to depose Defendant's 30(b)(6) designate are overbroad or vague.  Plaintiff will be prohibited from asking about the matters in request numbers 1-4, 22-23, 31-33, 38, and 46-47.

Plaintiff is prohibited from asking about matters that are not related to claims in her amended complaint, such as short-term disability leave and UPS's assignment of alternate work to

employees who lost their driver's licenses or failed the DOT exam.  Plaintiff will be prohibited from asking about the matters in request numbers 39-40.

On the matter of a relevant time period, Plaintiff's claims relate to how she was treated by Defendant in relation to her pregnancy, which occurred during the time period of October 11, 2006 to April 29, 2007.  The court has previously narrowed some discovery requests to the operative time period of January 1, 2006 through December 31, 2007.  Likewise, Plaintiff's 30(b)(6) deposition inquiries must be limited to a reasonable time period.  Defendant asks for request numbers 5-11, 13-23, 26-28, 30, 33-35, 38, and 49 to be limited to the January 1, 2006 through December 31, 2007 time period.  Plaintiff responds that a five-year time period is necessary for sixteen of those requests so that Plaintiff may compare her treatment to similarly situated people; those sixteen requests are numbers 15-20, 22-23, 26-28, 30, 33-35, and 38.  Plaintiff additionally contends that the matters involved in request numbers 5-11 and 13-14 are policies that were adopted before 2006.  Plaintiff also asserts that request numbers 21 and 49 should not be restricted to a particular time period, because they concern data about Plaintiff's own deliveries and hours worked.  Plaintiff's inquiries will be limited to the time period of January 1, 2006 through December 31, 2007 for request numbers

15-20, 26-28, 30, 34-35.   Plaintiff's inquiries will not be limited to a particular time period for request numbers 5-11, 13-14, 21, and 49.

Furthermore, Plaintiff's claims also are only related to her employment in Defendant's Metro D.C. District, which had its own local collective bargaining agreement that governed the terms and conditions of Plaintiff's employment, including her eligibility for an alternative work assignment.   (Paper 27, Attach. 1, at 8).   Therefore, Plaintiff's 30(b)(6) deposition inquiries must be limited to subjects that are related to Defendant's policies and actions that occurred in the Metro DC District.   Plaintiff contends that no geographical limit can be placed on request numbers 5-11 or 13-14 because they are company-wide matters.   Plaintiff's inquiries will be limited to the Metro D.C. District for request numbers 15-20, 26-29, and 34-35.   Additionally, the court previously limited Plaintiff's written discovery requests for information regarding employees who took pregnancy-related leave to the geographic area of the D.C. Building, where Plaintiff worked.   Likewise, Plaintiff's inquiries will be limited to the D.C. Building for requests regarding employees who took pregnancy-related leave.

Therefore, Defendant's motion for a protective order will be granted to prohibit Plaintiff's inquiries regarding requests numbered 1-4, 22-23, 31-33, 38-40, and 46-47, to limit

23

Plaintiff's inquiries regarding requests numbered 15-20, 26-30, and 34-35, to the January 1, 2006 to December 31, 2007 time period, and to limit Plaintiff's inquiries regarding requests numbered 15-20, 26-30, and 34-35 to the DC Metro District and any requests regarding employees who took pregnancy-related leave to the D.C. Building.

## VI.   Motion for Sanctions

Rule 11(b) provides, in part:

> (b)   Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it-- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

"The decision to impose sanctions under Rule 11 . . . is within the sound discretion of the trial court."  *See, e.g., Ost-West-*

*Handel Bruno Bischoff GMBH v. Project Asia Line, Inc.*, 160 F.3d 170, 177 (4th Cir. 1998).

Defendant seeks sanctions pursuant to Fed.R.Civ.P. 11 for Plaintiff's continued pursuit of a claim under the ADA.[3] Defendant argues that pregnancy is not recognized as a disability under the ADA. Defendant insists that sanctions are warranted for Plaintiff's continued pursuit of this baseless claim.

Defendant answered the Amended Complaint and no motion to dismiss or for summary judgment has been filed concerning the ADA claim. Thus, the claim remains a part of this litigation. The court declines to consider the merits of the sanctions motion until the ADA claim is resolved:

---

[3] Defendant served the motion for Rule 11 sanctions on Plaintiff on June 10, 2009, and filed the motion on July 2, 2009. (Paper 42). Plaintiff was not required to respond to Defendant's motion because the court did not direct her to do so. Local Rule 105.8(b).

> Courts should, and often do, defer
> consideration of certain kinds of sanctions
> motions until the end of trial to gain a
> full sense of the case and to avoid
> unnecessary delay of disposition of the case
> on the merits. This is a sensible practice
> where the thrust of the sanctions motion is
> that institution of the case itself was
> improper. See 5A Charles Alan Wright &
> Arthur R. Miller, Federal Practice and
> Procedure § 1337, at 121 (2d ed.1990).

*Lichtenstein v. Consolidated Services Group, Inc.*, 173 F.3d 17, 23 (1st Cir. 1999). Accordingly, Defendant's motion for sanctions will be denied without prejudice to renewal.

## VII. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied, Plaintiff's motion to amend will be denied, Plaintiff's motion to clarify or reconsider and for a hearing will be granted in part and denied in part, Defendant's motion for a protective order will be granted, and Defendant's motion for sanctions will be denied.  A separate Order will follow.


                              /s/
          _____
          DEBORAH K. CHASANOW
          United States District Judge

26